663 P.2d 1084

STATE of Idaho, Plaintiff-Respondent,

v.

James Francis GRATIOT,
Defendant-Appellant.

No. 13940.

Supreme Court of Idaho.

May 11, 1983.

Earl Gregg Lovan, Caldwell, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Jean Rynd Uranga, Deputy Atty. Gen., Boise, for plaintiff-respondent.

BISTLINE, Justice.

On the evening of August 9, 1979, the defendant stopped the victim, an eight-year-old girl, near the railroad tracks in downtown Nampa, Idaho. The defendant stuck his hand down the girl's pants and then exposed himself to her. While the defendant was exposing himself, the victim's mother arrived at the scene. After speaking with the defendant, she took the child to the police station. The defendant was arrested shortly thereafter as he was entering a bar in downtown Nampa.

A complaint was filed charging the defendant with lewd conduct with a minor, I.C. § 18–6607. After a preliminary hearing, the defendant was bound over for trial. He entered a plea of not guilty and thereafter filed a Notice of Defense Based Upon Mental Disease or Defect.[1] Prior to trial, the defendant moved for acquittal on the grounds of mental disease or defect, and, after hearing testimony from both sides, the trial court denied the motion.

At the trial the victim, her mother, the police and other witnesses all testified that on the day in question the defendant was intoxicated. The defendant testified that he had been an alcoholic for thirty years, that he was drunk on the day of the incident, and that he did not remember anything about the incident. Expert testimony established that the defendant is an alcoholic who suffers from irreversible, defuse chronic organic brain disease.

The jury found the defendant guilty of the offense charged, and the court sentenced him to an indeterminate sentence of fifteen years. The defendant appeals from the judgment of conviction and the sentence.

1. Former I.C. § 18–209 provided:
    Mental illness an affirmative defense—Notice of purpose to rely thereon—Verdict.—(1) Mental disease or defect excluding responsibility is an affirmative defense.
    "(2) Evidence of mental disease or defect excluding responsibility is not admissible unless the defendant, at the time of entering his plea of not guilty or within ten (10) days thereafter or at such later time as the court may for good cause permit, files a written notice of his purpose to rely on such defense.

I.

The defendant argues that the trial court erred in denying his motion for acquittal at the close of the State's case, which was a renewal of the defendant's pretrial motion for acquittal on the basis of mental disease or defect. Tr., p. 134. We do not agree.

Mental disease or defect excluding responsibility is an affirmative defense, I.C. § 18–209, but if evidence is presented which puts the sanity of the defendant in issue, it becomes the burden of the State to prove the defendant's sanity beyond a reasonable doubt. *State v. Myers,* 94 Idaho 570, 573, 494 P.2d 574, 577 (1972). However, until such evidence is presented, the defendant is presumed to have been sane and to have possessed a sufficient degree of reason to be responsible for his crime. *State v. Fuchs,* 100 Idaho 341, 345, 597 P.2d 227, 231 (1979); *State v. Iverson,* 77 Idaho 103, 108, 289 P.2d 603, 606 (1955). The mere filing of a notice by the defendant to rely upon the defense of mental disease or defect is not sufficient to put the sanity of the defendant in issue and shift the burden of proof to the State. *State v. Fuchs, supra; State v. Sanders,* 225 Kan. 147, 587 P.2d 893, 899 (Kan.1978).

The defendant argues that the State through its expert witness, Dr. John Stoner, presented evidence sufficient to raise the issue of the defendant's sanity and that therefore, it was incumbent upon the State to prove his sanity beyond a reasonable doubt in its case in chief. Upon cross-examination, Dr. Stoner testified: "I believe it is likely he was [in an alcoholic blackout on the day in question]." Tr., p. 125. How-

    "(3) When the defendant is acquitted on the ground of mental disease or defect excluding responsibility, the verdict and the judgment shall so state."
    This section was repealed, effective July 1, 1982. 1982 Idaho Sess.Laws ch. 368, § 1. For the present law on mental conditions affecting criminal liability, *see* I.C. §§ 18–207 and 19–2523.

ever, upon direct examination, Dr. Stoner's testimony was clearly to the effect that such a blackout has no impact on organized behavior patterns. Tr., p. 110–13. He stated that consciousness, purposeness of conduct and awareness are not affected by a blackout. Tr., p. 112. He characterized an alcoholic blackout as an amnesic condition. Tr., pp. 110–11. Taken in context, Dr. Stoner's testimony was not evidence sufficient to put the defendant's sanity in issue. Thus, the presumption of sanity still existed at the close of the State's case, and we cannot say that there was no evidence on which to base a verdict of guilty. Consequently, the trial court did not err in denying the defendant's motion for acquittal on the basis of mental disease or defect at the close of the State's case. *See State v. Vargas,* 100 Idaho 658, 659, 603 P.2d 992, 993 (1979); *State v. Warner,* 97 Idaho 204, 208, 541 P.2d 977, 981 (1975).

█ On appeal, the defendant argues for the first time that the trial court also erred in denying his motion for acquittal at the close of the State's case, because the State had failed to prove that he had the specific intent required under I.C. § 18–6607—"the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person [the defendant] or of such minor or child." We cannot agree. Although the State's witnesses testified that the defendant was intoxicated on the day in question, the question of whether his intoxication so affected him that he could not have

had the necessary intent to commit the offense was for the jury. I.C. §§ 18–115 and –116.[2] *See State v. Johnson,* 74 Idaho 269, 275–76, 261 P.2d 638, 641–42 (1953) (in prosecution for lewd and lascivious conduct with a minor, the defendant's intent held to be sufficiently established by the commission of the acts and the circumstances surrounding them, despite evidence that he was intoxicated); *State v. Gailey,* 69 Idaho 146, 152–53, 204 P.2d 254, 257–58 (1949) (in prosecution for assault with intent to commit rape, whether defendant had the specific intent to accomplish an act of sexual intercourse with prosecutrix or whether he was incapable by reason of intoxication to entertain the required specific intent, was a question for the jury, and evidence that the defendant was intoxicated does not establish as a matter of law that the defendant was incapable of forming the specific intent required). *See also State v. Roles,* 100 Idaho 12, 592 P.2d 68 (1979) (question of whether the defendant was incapable of forming the intent necessary for the crime of burglary because of intoxication or voluntary use of drugs was for the trier of fact).

## II.

█ The defendant argues that the trial court erred in failing to give the jury the instruction he requested as to the consequences of a verdict of not guilty by reason of mental disease or defect.[3] He contends that absent such an instruction the jury

2. I.C. § 18–115 provides:

"Manifestation of intent.—The intent or intention is manifested by the circumstances connected with the offense, and the sound mind and discretion of the accused. All persons are of sound mind who are neither idiots or lunatics, nor affected with insanity."
I.C. § 18–116 provides:

"Intoxication no excuse for crime.—No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining

the purpose, motive or intent with which he committed the act."

3. The defendant's requested instruction provided:

"When a defendant is acquitted on the ground of mental disease or defect excluding responsibility, the Court shall order him to be committed to the custody of the Director of the Department of Health and Welfare to be placed in an appropriate institution for custody, care and treatment.

"If the Director of the Department of Health and Welfare is of the view that a person committed to his custody may be discharged or released on condition without danger to himself or to others, he shall make application for the discharge or release of such person in a report to the Court by which such person was committed and shall trans-

may have been deterred from returning a verdict of not guilty by reason of mental disease or defect because of fear that he would be set free.

Although this is an issue of first impression in Idaho, there are many cases from other jurisdictions regarding whether a defendant is entitled to a jury instruction on the consequences of a verdict of not guilty by reason of mental disease or defect. These cases are collected and discussed at an Annotation at 11 A.L.R.3d 737 (1967 & Supp.1982), the majority position being that no such instruction is required. Having reviewed the cases in the Annotation and others on the issue, we believe that the majority position represents the better view. The reasoning of the Wyoming Supreme Court in *Lonquest v. State,* 495 P.2d 575, 584 (Wyo.1972), cert. denied 409 U.S. 1006, 93 S.Ct. 432, 34 L.Ed.2d 299 (1972), is persuasive:

"The function of the jury in this case or any criminal case is to determine the guilt or innocence of a defendant upon the evidence presented. This cannot depend upon probable or proper disposal of the defendant thereafter.... The giving of such instruction injects a totally irrelevant element into the jury's deliberations separate and apart from the function they serve and may tend to confuse them.... The suggested instruction may be an invitation for the jury to reach a compromise verdict." (Citations omitted.)

mit a copy of such application and report to the Prosecuting Attorney of the County from which the defendant was committed. The Court shall thereupon appoint at least two (2) qualified psychiatrists or licensed psychologists to examine such person and to report within sixty (60) days, or such longer period as the Court determines to be necessary for the purpose, their opinion as to his mental condition. To facilitate such examination and the proceedings thereon, the Court may cause such person to be confined in any institution located near the place where the Court sits, which may hereafter be designated by the Director of the Department of Health and Welfare as suitable for the temporary detention of irresponsible persons.

"If the Court is satisfied by the report filed and such testimony of the reporting psychiatrists or licensed psychologists as the Court deems necessary that the committed person may be discharged or released on condition without danger to himself or others, the Court shall order his discharge or his release on such conditions as the Court determines to be necessary. If the Court is not so satisfied, it shall promptly order a hearing to determine whether such person may safely be discharged or released. Any such hearing shall be deemed a civil proceeding and the burden shall be upon the committed person to prove that he may safely be discharged or released. According to the determination of the Court upon the hearing, the committed person shall thereupon be discharged or released on such conditions as the Court determines to be necessary, or shall be recommitted to the custody of the Director of the Department of Health and Welfare, subject to discharge or release only in accordance with the procedure prescribed above for a first hearing.

"If, within five (5) years after the conditional release of a committed person, the Court shall determine, after hearing evidence, that the conditions of release have not been fulfilled and that for the safety of such person or for the safety of others his conditional release should be revoked, the Court shall forthwith order him to be recommitted to the custody of the Director of the Department of Health and Welfare subject to discharge or release only in accordance with the procedure prescribed above for a first hearing.

"A committed person may make application for his discharge or release to the Court by which he was committed, and the procedure to be followed upon such application shall be the same as that prescribed above in the case of an application by the Director of the Department of Health and Welfare. However, no such application by a committed person need be considered until he has been confined for a period of not less than six (6) months from the date of the order of commitment, and if the determination of the Court be adverse to the application, such person shall not be permitted to file a further application until one (1) year has elapsed from the date of any preceding hearing on an application for his release or discharge.

"If a defendant escapes from custody during his confinement, the Director shall immediately notify the Court from which committed, the Prosecuting Attorney and the Sheriff of the County from which committed. The Court shall forthwith issue an order authorizing any health officer, peace officer or the director of the institution from which the defendant escaped, to take the defendant into custody and immediately return him to his place of confinement."

Thus, we hold that the trial court did not err in refusing to give defendant's requested instruction on the consequences of a verdict of not guilty by reason of mental disease or defect.

### III.

The defendant finally argues that the court abused its discretion in sentencing him to an indeterminate period of fifteen years. The defendant contends that the trial court did not adequately consider his mental and physical condition which resulted from his alcoholism.

The standards applicable to sentencing review were recently set forth by this Court in *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982):

> "A sentence fixed within the limits prescribed by the statute will ordinarily not be considered an abuse of discretion by the trial court. . . . However, in exercising that discretion reasonableness is a fundamental requirement, . . . and this Court must examine the circumstances of each case to determine whether the punishment imposed is excessive." (Citations omitted.)

The maximum punishment prescribed by I.C. § 18–6607 is life imprisonment, so the defendant's sentence of fifteen years was well within the statutory limit. However, in this case, as in *Nice*, it appears "that the trial court did not give proper consideration of the defendant's alcoholic problem, the part it played in causing defendant to commit the crime and the suggested alternatives for treating the problem." *Id.* at 91, 645 P.2d at 325.

In this case all the witnesses agreed that the defendant was highly intoxicated on the date in question. The defendant had no history of any sexual violations. The defendant was referred by the court to the Mental Health Center for psychiatric evaluation, and the psychiatric social worker who interviewed the defendant concluded:

> "It appears Mr. Gratiot is an alcoholic and, I suspect, has suffered some organic impairment as a result of his long history of alcohol abuse. He is not physically healthy and it would appear he could best be served by enforced treatment."

Under the circumstances we could, perhaps, and properly so, hold that the trial court abused its discretion and that the circumstances are sufficient enough to require us, in the furtherance of justice, to reduce the sentence. *See State v. Nice, supra,* 103 Idaho at 91, 645 P.2d at 325 (reducing sentence for lewd and lascivious conduct with a minor under the age of sixteen years from an indeterminate term not to exceed ten years to an indeterminate term of six years). *Compare State v. Chambliss,* 102 Idaho 677, 637 P.2d 1173 (1981), (concurrent sentences of eight years for convictions of grand larceny and lewd conduct with a minor child were not unduly harsh); *State v. Reimer,* 102 Idaho 299, 629 P.2d 695 (1981) (concurrent sentences for convictions on two counts of lewd conduct with a minor child were not an abuse of discretion where the trial record showed that the defendant had committed similar offenses between the time he was a teenager and the age of 35); *State v. Reese,* 98 Idaho 347, 563 P.2d 405 (1977) (in prosecution for lewd and lascivious conduct with a minor the trial judge did not abuse his discretion in imposing a 15-year sentence, in view of defendant's history of criminal and antisocial behavior ranging from such crimes as assault to sodomy to grand larceny and in view of evidence indicating that the defendant was potentially dangerous, particularly to young people).

A majority of the Court being of the opinion that it would be more appropriate that the district court under a Rule 35 motion determine now, some thirty months since imposition of sentence, whether a reduction of the sentence is in order, accordingly we affirm.

DONALDSON, C.J., and SHEPARD and HUNTLEY, JJ., concur.

BAKES, J., concurs in Parts I and II, and concurs in the result in Part III.